It is no doubt true that appellant deserted appellee without just and legal excuse, and that he is entitled to the decree of divorce awarded him. But this litigation concerns not the divorce, but the custody of a child, a little girl who was born in January, 1943. The suit which culminated in the decree from which is this appeal, was filed December 6, 1945, at which time the child was only three years old, and she was less than five years old when the final decree was rendered.
There are conflicts in the testimony which I shall not review, and which cannot be reconciled. Appellant's excuse for her abandonment of her husband is that her mother-in-law's domination became intolerable. But I think there is no credible testimony that she ever abandoned the child. The testimony of the mother-in-law that appellant told her she did not want the child and that she, the grandmother, might have it "as her own" does not comport with appellant's attitude throughout *Page 546 
the entire case. The majority opinion recites that "The record does not show that the mother was immoral, nor was she without maternal love." Appellant never, at any time, abandoned the custody of her child. It is true that for a time she left her child with her mother-in-law, but she did this in order that she might earn her support and during all the time the mother-in-law had the custody of the child, appellant contributed to its support, not only from the government allotment, but also from her own earnings.
The litigation is in fact between the mother of the child and its grandmother, as appellee admits he had no home to which the child could be taken, but he testified that he could take it to Alabama, where he was employed, and have a negro girl take care of it.
The grandmother herself has no home of her own, but lives in a section house in Missouri, furnished the grandfather as a section foreman. On the other hand, Miss Polly Wilson testified that she is a child welfare worker, in charge of that work for the whole of Mississippi county, and that she has known appellant for two years, has advised her about the child, then living with its mother in an adjoining apartment. She further testified that the child and its mother loved each other, and that the mother is a fit and proper person to have its custody.
We have frequently, and recently, had many cases involving the custody of infant children, in all of which it was said the primary consideration is the welfare of the child, and in my opinion it is always to the best interest of a little girl four years old, that the mother have its custody, unless she abandoned it, or is shown to be a wholly unfit person.
One of the most recent of these cases is that of Aucoin v. Aucoin, 211 Ark. 205, 200 S.W.2d 316. There much testimony was offered tending to show the infidelity of the mother, but it was said that it would be better for a concerned that the unsavory evidence adduced on this issue be left out of the opinion. Yet it was held that the custody of the child, a three year old girl, *Page 547 
should be awarded the mother on account of the child's tender age.
Here the majority find that the charge of immorality against the mother was not sustained, and it is undisputed that regardless of any past indiscretions, if such there were, the mother is now leading a correct life, and I think the permanent custody of the child should have been awarded to her.
The majority opinion awards the custody of the child for three months every year to the mother, which imputes the finding that she is not an unfit person to have the custody of the child, but I think she should have been awarded the permanent custody of the child.
In my opinion the divided custody of a child, and especially a small child, is always unfortunate and should be ordered only in exceptional cases, and this is not one of them. The contending parties love the child, of course, and want its custody, otherwise there would be no litigation, and it is too much to expect of human nature that the person having temporary custody, at particular times, would not attempt to win its affection to a point of preference on the part of the child.
In many instances this is done openly, and in other instances almost unconsciously, yet insidiously affecting the child's attitude towards its parents, with the too frequent result that the child does not have the proper love and respect for either parent.
It was said long ago by the Savior that a man cannot serve two masters, nor can a child. If the custody is changed from one person to another the child is bewildered, and does not know who to obey and there can be no proper discipline under these circumstances. There would be the constant fear, if authority were assumed, and correction employed, that the child would learn to prefer the parent more indulgent.
In my opinion the custody of small children should be awarded to one parent with the right of visitation by the other. *Page 548 
But apart from all these considerations, the little girl is too young to have her custody taken away from her mother for any part of the time, and I therefore dissent as I think the decree should be reversed and the permanent custody of the child awarded to appellant, its mother, with visitation rights to the father and his mother.